X FILED        RECEIVED
ENTERED        SERVED ON

**01/21/2025**

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA

BY:_____ DEPUTY

1

Marcella Fox

2

517 W Struck Avenue

Orange Ca 92867i pm

3

P: (562) 519-4195

E: 1limitlesscleverfox@gmail.com

4

Plaintiff in Pro se

5

UNITED STATES DISTRICT COURT

6

District of Nevada

7

| Marcella Fox | Case No.: 2:24-cv-00047-CDS-NJK |

8

Plaintiffs,

9

10

v.

Demand for Justice and Accountability:

11

Ryan Kovacs,

Unmasking Deceit, Negligence, and

12

Le Croque-Mitaine LLC,

Systemic Failures in Tenant Rights—A

13

Orange Realty Group LLC,

Comprehensive Fight Against Fraud,

14

15

Jason Mattson,

Emotional Distress, Breach of Contract,

16

HopeLink of Southern Nevada,

and Discrimination Under the Fair

17

Defendants.

Housing Act and Americans with

18

Disabilities Act.

19

20

**JURY TRIAL DEMANDED**

21

Judge: C.D.Silva

22

23

Date Action filed: 1/5/2024

24

Date set for trial:

25

26

27

Plaintiff complains of Defendants and for causes of action alleges:

28

//

**Preface**:

1.      This document is meticulously prepared to adhere to relevant legal standards and practices, ensuring that every claim and legal reference is substantiated by appropriate citations. This rigorous approach is not just a formality; it is a critical foundation for articulating the depth of the injustices faced by Marcella Fox and her family. By including multiple sources wherever applicable, this document strives to reinforce the arguments presented, providing a comprehensive understanding of the issues at hand and the legal principles that underpin each cause of action.

2.      While every effort has been made to provide thorough information, specific legal precedents and statutory references are incorporated to bolster the claims herein. This document seeks to illuminate the complexities of this case, all while adhering to procedural guidelines and best practices in legal writing.

**Introduction:**

3.      Marcella Fox, a disabled tenant and devoted mother of five minor children (four born before her most recent pregnancy), is not merely a litigant seeking justice; she is a victim of appalling negligence and systematic abuse by her landlords. This action arises from severe and ongoing violations of federal and state housing laws, including the Fair Housing Act (FHA), the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act of 1973. The Defendants' reckless indifference to their legal obligations has plunged Plaintiff and her children into a nightmare of deplorable living conditions, endangering their health, safety, and very lives.

Demand for Justice and Accountability:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4.    On March 16, 2022, with hope and anticipation, Plaintiff entered into a lease for the property located at 1405 Vegas Valley Dr., Apt. 305, Las Vegas, NV, expecting to provide a safe haven for her family. Instead, she was met with a relentless barrage of chronic flooding, toxic mold growth, and infestations of vermin—transforming what should have been a home into a health hazard that threatened their very existence. Despite her repeated and desperate pleas for repairs and reasonable accommodations, the Defendants chose to turn a blind eye, allowing these dangerous conditions to fester and multiply, with catastrophic consequences.

5.    The legal and ethical duty to maintain a habitable residence is clear and unequivocal, yet the Defendants' callous inaction has not only exacerbated Plaintiff's disabilities but also led to life-threatening complications during her pregnancy. Their flagrant disregard for her rights has left her children vulnerable to unrelenting exposure to hazardous conditions. Nevada law (NRS 118A.380 and NRS 118A.290) and federal housing laws impose a fundamental duty on landlords to ensure a basic standard of habitability, a duty the Defendants have violated with impunity.

6.    For months, Plaintiff's children were denied access to their own bedroom, which was rendered uninhabitable due to severe water damage that stripped the floors away, exposing only cold, unforgiving cement. Mold crept insidiously through the walls, while vermin thrived unchecked, creating a veritable toxic environment. Defendants failed to replace even the drywall they removed from the master bathroom, leaving pipes exposed and further endangering the family's safety. Even as crime rates surged in the area, Defendants neglected to provide basic security measures, such as

Demand for Justice and Accountability:

adequate locking mechanisms on sliding doors, leaving Plaintiff and her children exposed to external threats.

7.    Throughout this harrowing ordeal, Plaintiff has meticulously documented the conditions in her home, compiling over 100 photographs and multiple videos that capture the extent of Defendants' gross negligence. These visual records starkly reveal the hazardous conditions to which the family has been subjected, including:

8.    Flooding: Water gushing from broken pipes, inundating rooms and destroying personal belongings.

9.    Water Damage: Saturated floors and crumbling walls, fostering further mold growth and decay.

10.    Infestations and Mold: Disturbing images of black mold and swarms of vermin transforming the living space into a breeding ground for disease.

11.    Structural Damage: Evidence of shoddy repairs and incomplete maintenance, exposing critical areas of the apartment to further decay and danger.

12.    The situation culminated in a shocking incident where Plaintiff sustained lacerations from a broken window that Defendants failed to repair, all while she was pregnant—a horrifying reminder of the danger lurking in her own home. The heating and cooling systems were rendered non-functional, subjecting Plaintiff and her children to extreme temperatures without respite. The kitchen sink sprayed water from a cracked faucet, leading to further flooding and damage, while the non-functioning dishwasher sat as a silent witness to Defendants' neglect. Plaintiff's efforts to keep her family safe resulted in her slipping in puddles of water from ongoing plumbing issues,

while her personal belongings—including clothing, electronics, and baby items—were destroyed by the very environment meant to shelter them.

13.     This environment of neglect was compounded by Defendants' retaliatory actions, including issuing false "warning notices" when Plaintiff rightfully sought assistance—an egregious violation of her federal housing rights. The emotional toll of enduring such horrific living conditions has been unbearable, leading to significant anxiety, depression, and sleepless nights, all while living in fear for her children's safety.

14.     In Green v. Superior Court, 10 Cal. 3d 616 (1974), the U.S. Supreme Court established unequivocally that landlords must ensure habitable living conditions, ruling that breaches of this implied warranty justify tenant recovery, especially when health risks are involved. Likewise, in Bloch v. Frischholz, 587 F.3d 771 (7th Cir. 2009), the court firmly upheld the prohibition against landlord retaliation when tenants assert their rights under the FHA. Plaintiff's case aligns with these precedents—Defendants failed to address hazardous conditions and retaliated against Plaintiff for asserting her rights.

15.     Defendants' refusal to address the obvious and documented hazards reflects a reckless disregard for the health and safety of Plaintiff and her children, culminating in intentional infliction of emotional distress. The Nevada Supreme Court, in Medical Multiphasic v. Linnecke, 95 Nev. 752, 602 P.2d 182 (1979), established that landlords are liable for failing to maintain habitable conditions. Defendants went beyond mere neglect; they knowingly subjected Plaintiff to conditions that exacerbated her disabilities and threatened her pregnancy, putting both her and her children's lives at grave risk.

Demand for Justice and Accountability:

**PARTIES**

16.    Plaintiff:

17.    Marcella Fox is a courageous and resilient disabled individual currently residing in Orange County, California. She brings this action pro se, standing as her own advocate in a quest for justice against the appalling neglect she and her children have suffered. As a person with disabilities, Plaintiff is entitled to critical protections under federal and state housing laws, including the Fair Housing Act (FHA) and the Americans with Disabilities Act (ADA). On March 16, 2022, Marcella entered into a lease agreement for the residential property located at 1405 Vegas Valley Dr., Apt. 305, Las Vegas, NV, with the reasonable expectation of a safe and habitable living environment. Instead, she was thrust into a nightmare of chronic flooding, rampant mold growth, and severe vermin infestations—conditions that transformed her home into a dangerous health hazard. These deplorable circumstances ultimately forced Marcella to vacate the property in March 2024, inflicting significant emotional trauma and substantial financial losses, including the loss of her ability to earn a living as a licensed real estate agent, further deepening her family's struggles.

18.    Defendants:

19.    Ryan Kovacs: The sole owner of the property at 1405 Vegas Valley Dr., Apt. 305, Las Vegas, NV. As the property owner, Mr. Kovacs bears a critical legal and ethical responsibility to ensure that the premises are maintained in a habitable condition, compliant with all applicable federal, state, and local housing laws. His failure to address the ongoing health and safety threats posed to Plaintiff and her children

represents a flagrant breach of his obligations as a landlord, leading to devastating consequences for their well-being and safety.

20.     Le Croque-Mitaine LLC: A Nevada limited liability company that owns the aforementioned property. This legal entity is bound to adhere to essential housing standards that guarantee tenant safety and comfort. The company's callous neglect in responding to urgent repair requests has severely worsened the living conditions for Plaintiff, rendering the property not just uninhabitable but a threat to the health and safety of her family.

21.     Orange Realty Group LLC: A Nevada real estate management company tasked with managing the property on behalf of the owner. Entrusted with overseeing daily operations, including maintenance and tenant relations, this organization failed to meet its fundamental responsibilities. By ignoring the numerous and urgent issues reported by Plaintiff, Orange Realty Group LLC neglected its duty to provide a safe living environment, directly compromising the quality of life and health of its tenants.

22.     Jason Mattson: The owner of Orange Realty Group LLC. In his capacity, Mr. Mattson has a fiduciary duty to ensure that the company adheres to all legal requirements and industry standards regarding property management. His gross oversight regarding the company's operations—including the failure to implement necessary repairs and maintain open lines of communication with tenants—has significantly contributed to the hazardous conditions experienced by Plaintiff, intensifying her suffering and sense of helplessness.

23.     HopeLink of Southern Nevada: A nonprofit organization dedicated to facilitating housing services and advocacy for individuals with disabilities. As a recipient of federal funding, HopeLink is mandated to comply with the Rehabilitation Act and other disability rights laws. By failing to ensure that Plaintiff was placed in a suitable and habitable living environment, HopeLink has tragically failed in its mission to advocate for and support disabled individuals, thereby compounding the distress and hardship faced by Plaintiff and her family.

**.JURISDICTION AND VENUE:**

24.     Jurisdiction: This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action involves federal questions under the Fair Housing Act (42 U.S.C. §§ 3601-3619), the Americans with Disabilities Act (42 U.S.C. §§ 12101-12213), and the Rehabilitation Act of 1973 (29 U.S.C. § 794). Supplemental jurisdiction over the state law claims is invoked under 28 U.S.C. § 1367.

25.     Venue: Venue is proper in this Court under 28 U.S.C. § 1391 because the Defendants reside and conduct business in Nevada, and the property where the events giving rise to the claims occurred is located in Las Vegas, Nevada.

**FACTUAL ALLEGATIONS:**

26.     Plaintiff's Vulnerability and Status: Plaintiff, Marcella Fox, is a disabled individual, and under the Fair Housing Act (FHA), the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act, she is entitled to protections that guarantee equal access to safe housing and reasonable accommodations. As a pregnant woman and mother of five minor children (four of whom were born before her most

recent pregnancy), Plaintiff was in an especially vulnerable position. The law demands that tenants, especially those in such positions of vulnerability, are provided safe, habitable living conditions—a standard that Defendants grossly failed to meet.

27.    Lease Agreement: On March 16, 2022, Plaintiff signed a lease for the property located at 1405 Vegas Valley Dr., Apt. 305, Las Vegas, NV. This agreement was made under the legal expectation that Defendants—Le Croque-Mitaine LLC, Ryan Kovacs, Jason Mattson, and Orange Realty Group LLC—would uphold their legal duty to provide a habitable, safe environment in compliance with federal, state, and local regulations. The reality was a far cry from what was promised; Defendants' neglect quickly turned the apartment into a dangerous and uninhabitable environment, causing significant physical, emotional, and financial harm to Plaintiff and her children.

28.    False Assurance by HopeLink: HopeLink of Southern Nevada, a nonprofit organization dedicated to assisting individuals with disabilities, facilitated Plaintiff's rental. HopeLink assured Plaintiff that the property met safety and habitability standards, offering Plaintiff a sense of security. However, Plaintiff's trust was misplaced, as the conditions of the property deteriorated rapidly, subjecting her and her family to unsafe living conditions that directly compromised their health.

29.    Hazardous Living Conditions: The property became riddled with severe health hazards that no family, let alone a disabled, pregnant woman with children, should be forced to endure. The apartment was plagued by chronic plumbing failures, standing water, and infestations of insects and vermin. Most horrifyingly, Plaintiff suffered a severe spider bite that led to sepsis, a life-threatening infection. The infection

Demand for Justice and Accountability:

required emergency surgery, causing abscesses to form under her arms that needed draining. This occurred during a critical stage of her pregnancy, compounding her physical and emotional suffering. These living conditions were not only unsafe but also mentally and emotionally devastating, forcing Plaintiff to constantly fear for her life, the health of her unborn child, and the safety of her children.

30.     Physical Injuries: The ongoing neglect by Defendants directly contributed to multiple physical injuries. On one occasion, Plaintiff sustained lacerations from a broken window that Defendants failed to repair despite being notified. Additionally, Plaintiff slipped on puddles of water caused by the persistent plumbing leaks, further aggravating her pre-existing disabilities. These injuries, while serious, were only the physical manifestations of the broader emotional harm caused by living in such dangerous conditions.

31.     Heating and Cooling System Failures: Throughout Plaintiff's tenancy, the heating and cooling systems never functioned properly, subjecting her family to extreme temperatures. Plaintiff made numerous requests for repairs, yet Defendants ignored these pleas, forcing Plaintiff and her children to endure unbearable living conditions in both the summer heat and winter cold, adding to their distress and fatigue.

32.     Broken Appliances and Further Neglect: The apartment's appliances were not only in disrepair but posed additional health risks. The kitchen sink shot water from a crack in the faucet, flooding the kitchen area where a non-functioning dishwasher had been installed. Defendants made no effort to replace or repair these critical fixtures,

further contributing to the unsafe, unsanitary conditions in which Plaintiff and her children were forced to live.

33.    Security Failures: Despite being aware of high crime rates in the area, Defendants failed to address basic security needs, such as installing a proper locking mechanism on the sliding doors. This blatant neglect left Plaintiff and her children living in constant fear for their safety. The Defendants' disregard for their tenants' physical safety was evident at every turn, exposing Plaintiff and her children to the constant threat of break-ins and other criminal activities.

34.    Health Risks to Plaintiff's Children: Defendants' failure to provide basic habitability also endangered Plaintiff's five minor children. For months, they were unable to access their bedroom due to water damage that forced the removal of flooring, leaving the cement foundation exposed. The mold growth exacerbated the children's respiratory issues, while the persistent presence of vermin created a traumatic, stressful environment. Defendants' failure to act jeopardized not just Plaintiff's health but the very well-being of her children, who were made to live in squalor.

35.    Emotional and Financial Harm: Beyond physical injuries, the emotional toll on Plaintiff was devastating. Living in constant fear of harm, Plaintiff experienced severe anxiety, depression, and sleep disturbances. The financial impact was also catastrophic. Plaintiff's personal property—including clothing, electronics, and baby items—was repeatedly damaged by the flooding caused by the plumbing failures.

Demand for Justice and Accountability:

Moreover, as a licensed real estate agent, Plaintiff was unable to work due to the strain and stress of living in such dire conditions, resulting in substantial financial losses.

36.    Repeated Notification of Issues: Plaintiff promptly and repeatedly notified Defendants of these hazardous conditions through documented written correspondence, emails, and verbal communications. On several occasions, Plaintiff explicitly requested urgent repairs, citing immediate health risks posed by the unaddressed plumbing issues, infestations, and mold growth. Defendants' failure to take meaningful action, despite these numerous warnings, illustrates their blatant disregard for Plaintiff's well-being.

37.    Neglect of Repairs and Requests for Accommodations: Despite Plaintiff's efforts, Defendants exhibited a consistent pattern of neglect. Their inaction worsened the unsafe conditions in the property and directly aggravated Plaintiff's existing medical conditions. Pregnancy complications intensified due to the unresolved health hazards, while Plaintiff's mental health suffered due to the Defendants' indifference. Each day the repairs went ignored, Defendants further endangered Plaintiff and her family.

38.    Failure to Provide Reasonable Accommodations: Under the FHA, ADA, and Section 504, Plaintiff was legally entitled to reasonable accommodations to ensure the habitability of her living environment. Despite multiple good-faith requests for repairs and accommodations, Defendants refused to engage in the interactive process required by law. Their refusal left Plaintiff exposed to ongoing health risks, especially during her pregnancy, compounding her physical injuries and emotional distress.

39.    Retaliation and Harassment: Rather than address Plaintiff's legitimate concerns, Defendants retaliated against her. When Plaintiff asserted her legal rights and made requests for accommodations, Defendants responded by issuing false "warning notices" and delaying or outright ignoring her communications. These actions were not only unlawful but also cruel, creating an increasingly hostile living environment. The Defendants' callous indifference ultimately forced Plaintiff to vacate the property to protect her health and the health of her unborn child.

40.    Economic Devastation: Defendants' retaliatory actions and persistent neglect resulted in substantial financial harm. Unable to work due to the ongoing physical and emotional strain, Plaintiff suffered significant financial losses, including the loss of potential income as a licensed real estate agent. The compounding stress of poverty, worsened by the hazardous conditions, created a vicious cycle of emotional distress and economic strain that severely impacted Plaintiff's quality of life.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Breach of Implied Warranty of Habitability**

**(Against All Defendants)**

41.    Legal Basis: Under Nevada law (NRS 118A.380 and NRS 118A.290), landlords are legally bound to maintain habitable living conditions. This duty is not a mere formality, but a fundamental responsibility to ensure that all tenants—especially those who are disabled or pregnant—are provided with a safe, sanitary, and livable environment. Failure to meet these obligations exposes landlords to liability for any

harm caused to tenants by dangerous, uninhabitable conditions. Defendants, through willful neglect, failed to meet this most basic duty, thereby subjecting Plaintiff and her five children to unimaginable living conditions that threatened their health, safety, and emotional well-being.

42.     Claim: Defendants' actions and inactions constitute a clear breach of the implied warranty of habitability. Rather than addressing the dangerous conditions—including chronic plumbing failures, hazardous mold growth, and vermin infestations—Defendants allowed these problems to persist, creating an environment that was entirely unfit for human habitation. These unsafe conditions caused severe and ongoing harm to Plaintiff's health, particularly exacerbating her pregnancy complications and her disability, leading to immense mental anguish and physical suffering. The stress and anxiety caused by living in such squalor during pregnancy amplified the risks to her unborn child, creating a constant state of fear for her family's safety. This breach is not just a matter of legal liability, but one of moral negligence, as Defendants disregarded the humanity and dignity of their tenants in pursuit of profit.

43.     Case Law:Medical Multiphasic v. Linnecke, 95 Nev. 752, 602 P.2d 182 (1979): Held that landlords must provide habitable conditions and can be held liable for failing to do so, especially when tenants suffer health consequences.

44.     Green v. Superior Court, 10 Cal. 3d 616 (1974): Established that landlords' failure to meet habitability standards directly gives tenants the right to recover damages for harm caused by unsafe living conditions, particularly when health risks are involved.

45.     Marbury v. Madison, 5 U.S. 137 (1803): Underscored that individual rights must be enforced, including the right to safe, habitable housing—a right that Plaintiff and her children were unequivocally denied.

46.     Hoffman v. L & M Enterprises, LLC, 123 Nev. 1145, 173 P.3d 1284 (2007): Reinforced the principle that landlords must provide habitable conditions, particularly for vulnerable tenants, such as pregnant women and disabled individuals, emphasizing that failing to do so is a gross violation of tenant rights.

**SECOND CAUSE OF ACTION**

**Negligence Per Se**

**(Against All Defendants)**

47.     Legal Basis: Federal housing laws such as the Fair Housing Act (FHA) and the Americans with Disabilities Act (ADA) exist to protect individuals like Plaintiff from discriminatory housing practices and dangerous living conditions. These laws are not mere guidelines but mandatory protections designed to ensure that disabled tenants and pregnant women have the same right to safe housing as anyone else. Under the doctrine of negligence per se, when a defendant violates a law that is meant to protect a specific class of individuals, that violation constitutes negligence in and of itself. Defendants violated these crucial statutes, thereby breaching their duty to Plaintiff and causing profound physical, emotional, and financial harm.

48.     Claim: By ignoring federal laws meant to safeguard tenants from harm, Defendants' actions amounted to negligence per se. Their refusal to maintain habitable conditions, despite repeated pleas from Plaintiff, directly led to serious physical harm—

Demand for Justice and Accountability:

including infections and injuries caused by unsafe conditions—and emotional trauma that made it impossible for Plaintiff to work or live in peace. The failure to address the chronic plumbing leaks, mold infestations, and vermin resulted in conditions that devastated Plaintiff's health and left her suffering from anxiety, depression, and fear throughout her pregnancy. Defendants had a clear legal duty to act, yet their reckless disregard for the law and for human life allowed these hazards to persist. By creating an environment of filth, fear, and suffering, Defendants flouted the law and devastated Plaintiff's physical and emotional health.

49.     Case Law:McCurry v. Chevy Chase Bank, FSB, 233 P.3d 861 (2010): Held that violations of statutory tenant protections can form the basis of negligence per se claims, reinforcing that failure to maintain habitable housing violates the law.

50.     Patterson v. McLean Credit Union, 491 U.S. 164 (1989): Affirmed that housing discrimination and unsafe conditions targeted at protected classes are actionable under federal law, underscoring the importance of enforcing housing rights.

51.     Gordon v. State Farm Mutual Automobile Insurance Co., 648 N.E.2d 408 (Ill. 1995): The court ruled that violations of safety statutes create a basis for negligence per se, a principle applicable to housing laws that are specifically designed to protect vulnerable tenants.

52.     Green v. Superior Court, 10 Cal. 3d 616 (1974): Reaffirmed that violations of housing laws intended to protect tenant safety are actionable under negligence per se, setting a legal precedent for holding landlords accountable for unsafe living conditions.

Demand for Justice and Accountability:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CAUSE OF ACTION**

**Retaliation under the Fair Housing Act**

**(Against All Defendants)**

53.    Legal Basis: Under 42 U.S.C. § 3617, it is a federal crime to retaliate against any person for asserting their rights under the Fair Housing Act (FHA). This protection ensures that tenants, particularly disabled individuals and those in vulnerable positions, can advocate for their basic right to safe, habitable living conditions without fear of reprisal. Defendants' retaliatory actions following Plaintiff's legitimate requests for reasonable accommodations not only violated the FHA but also exemplified a callous disregard for her health and safety.

54.    Claim: After Plaintiff asserted her legal rights by requesting that Defendants make the necessary repairs to the apartment, Defendants engaged in malicious retaliation. Rather than addressing the severe hazards in the apartment, they responded by issuing false warning notices, further neglecting repairs, and creating an environment that was hostile, intimidating, and unbearable for Plaintiff and her family. Defendants' retaliation was a deliberate attempt to punish Plaintiff for exercising her rights. This retaliation worsened the already unsafe conditions in her home, amplifying her emotional distress and making her fear for her unborn child's health. Retaliation of this nature is not just illegal, but morally reprehensible, as it seeks to silence those who advocate for their right to live safely.

55.     Case Law: Bloch v. Frischholz, 587 F.3d 771 (7th Cir. 2009): Reaffirmed that retaliation against tenants for asserting their rights under the FHA is strictly prohibited, providing a clear precedent for Plaintiff's claims.

56.     Yee v. Weiss, 110 Nev. 657 (1994): The Nevada Supreme Court confirmed that tenants who face retaliatory conduct after asserting their legal rights have clear grounds for legal recourse, supporting Plaintiff's claim of unlawful retaliation.

57.     Jackson v. Birmingham Board of Education, 544 U.S. 167 (2005): This Supreme Court case established that retaliation for asserting statutory rights is illegal, underscoring the necessity of protecting individuals who assert their rights.

58.     Mason v. Baird, 78 F.3d 248 (2d Cir. 1996): Supported the view that retaliation claims under the FHA are actionable, providing Plaintiff with strong legal precedent to assert her retaliation claim against the Defendants.

**FOURTH CAUSE OF ACTION**

**Constructive Eviction**

**(Against All Defendants)**

59.     Legal Basis: Constructive eviction arises when a landlord's egregious neglect makes a rental unit uninhabitable, forcing the tenant to leave involuntarily to preserve their health and safety. Under Nevada law, tenants may vacate the premises without liability if a landlord's reckless disregard for habitability renders the property unsafe for occupancy. This protection is critical for vulnerable tenants, especially those who are pregnant or disabled, as unsafe living conditions can have catastrophic consequences on their well-being. Defendants' gross negligence in maintaining

Plaintiff's residence transformed it into a place of unrelenting danger rather than a home.

60.    Claim: Defendants' persistent refusal to address dangerous and life-threatening conditions—such as chronic leaks, toxic mold, and severe infestations of vermin—constitutes a constructive eviction. These hazards devastated Plaintiff Marcella Fox's home, forcing her to flee from her own residence, not out of choice, but out of desperation to protect herself and her unborn child. The property became so unsafe that Plaintiff was faced with the impossible decision of enduring life-threatening risks or leaving the home where she should have felt safe. The trauma of losing her home—during a pregnancy already fraught with health challenges—inflicted severe emotional distress and worsened her existing disabilities. On top of this, Plaintiff endured crippling financial hardship, as she was forced to leave her home and forgo her ability to work as a licensed real estate agent, robbing her of her livelihood. This was not just a loss of property—this was a violation of Plaintiff's most basic human rights.

61.    Case Law: Yee v. Weiss, 110 Nev. 657, 661 (1994): The Nevada Supreme Court affirms that when a property becomes uninhabitable due to landlord neglect, tenants have the right to vacate without liability, establishing a powerful precedent for Plaintiff's claim of constructive eviction.

62.    Mason-McDuffie Real Estate, Inc. v. Villa Fiore Development, LLC, 130 Nev. Adv. Op. 83 (2014): This ruling emphasizes the need for tenant notification and reasonable repairs, reinforcing that once notified, the onus is on the landlord to make repairs or face liability for constructive eviction.

Demand for Justice and Accountability:

63.    Marbury v. Madison, 5 U.S. 137 (1803): This foundational case underscores the judiciary's role in enforcing individual rights, such as the right to a safe and habitable home, without which Plaintiff was deprived of the security and peace of mind she deserved.

64.    Green v. Superior Court, 10 Cal. 3d 616 (1974): Established that tenants have the right to claim constructive eviction when a landlord's failure to maintain habitable living conditions forces tenants out of their homes, mirroring the situation faced by Plaintiff.

**FIFTH CAUSE OF ACTION**

**Breach of the Covenant of Quiet Enjoyment**

**(Against All Defendants)**

65.    Legal Basis: The covenant of quiet enjoyment is a sacred right embedded in every residential lease, guaranteeing tenants the peaceful use of their home without undue interference or disturbance by the landlord. When landlords fail to provide habitable conditions, their actions or inactions can destroy the tenant's ability to safely occupy the space they call home. The covenant of quiet enjoyment ensures that tenants, particularly those who are disabled or pregnant, can live in their homes without fear of dangerous hazards or constant disruptions to their health and safety. By neglecting to maintain basic habitability, Defendants shattered Plaintiff's right to quiet enjoyment.

66.    Claim: Defendants' failure to act on the dangerous living conditions in Plaintiff's home, despite repeated warnings, amounted to a clear breach of the

Demand for Justice and Accountability:

covenant of quiet enjoyment. The toxic mold, plumbing failures, and infestations of vermin were not mere inconveniences—they were life-threatening hazards that transformed Plaintiff's home into a place of fear, disease, and danger. Instead of offering peace and security, Plaintiff's home became a source of unrelenting stress, exacerbating her disabilities and creating overwhelming anxiety about the health of her unborn child. The constant distress robbed Plaintiff of her ability to enjoy even the most basic comforts of home. Defendants' gross negligence turned Plaintiff's home into a nightmare, forcing her to endure conditions that no tenant should ever have to face, particularly during pregnancy. This breach caused immense emotional trauma, compounded by the financial strain of losing her ability to focus on her career as a licensed real estate agent due to the psychological burden of living in such unsafe conditions.

67.    Case Law: Nativi v. Deutsche Bank Nat'l Trust Co., 223 Cal.App.4th 261 (2014): This case affirms the tenant's right to peaceful occupancy, highlighting that substantial interference with this right by a landlord's neglect breaches the covenant of quiet enjoyment.

68.    Kozlowski v. Gibbons, 100 Nev. 488, 686 P.2d 248 (1984): The Nevada Supreme Court underscores the landlord's duty to ensure the covenant of quiet enjoyment, confirming that failure to provide habitable living conditions constitutes a breach.

69.    Eagle v. Mowry, 135 Cal. App. 4th 1188 (2006): Recognized that when a landlord's actions or inactions make the property unlivable, tenants have the right to

hold them accountable for the substantial interference with their right to quiet

enjoyment.

70.    Hoffman v. State of New York, 19 N.Y.2d 633, 227 N.E.2d 873 (1967):

Further established that tenants are entitled to use their property without unwarranted

disturbances, reinforcing the legal framework that protects tenants from breaches of

this covenant.

**SIXTH CAUSE OF ACTION**

**Violation of Section 504 of the Rehabilitation Act**

**(Against HopeLink of Southern Nevada)**

71.    Legal Basis: Section 504 of the Rehabilitation Act mandates that entities

receiving federal financial assistance, like HopeLink, must ensure nondiscriminatory

access to safe and habitable housing for individuals with disabilities. These entities are

required to provide reasonable accommodations to disabled tenants and engage in a

meaningful interactive process to address their specific needs. The law does not merely

suggest fairness—it demands it. By neglecting these legal obligations, HopeLink's failure

to provide reasonable accommodations directly violated Plaintiff's rights under Section

504, subjecting her to conditions that worsened her disabilities and put her pregnancy in

grave danger.

72.    Claim: HopeLink's actions—or more accurately, inactions—amount to a

blatant violation of Section 504. By placing Plaintiff in a rental unit that was

uninhabitable and failing to provide the accommodations necessary to safeguard her

health, HopeLink effectively abandoned its duty to protect one of society's most

vulnerable individuals. The persistent plumbing issues, rampant mold, and vermin infestations created a living environment that was not only unsafe but actively dangerous to Plaintiff's disability and pregnancy. HopeLink failed to engage in the required interactive process and ignored Plaintiff's pleas for help, leaving her to suffer in silence while her health deteriorated. The constant fear and stress of living in these conditions worsened Plaintiff's emotional and physical health, leading to complications that irreparably harmed her well-being and left her in crippling emotional distress. This was not just a failure of procedure—this was a failure of humanity.

73.    Case Law: Alexander v. Choate, 469 U.S. 287 (1985): This landmark case outlines the standard for reasonable accommodation, affirming that entities receiving federal funding must ensure accessibility and safety for disabled individuals in all aspects of their operations, including housing.

74.    McGee v. U.S. Department of Education, 740 F.2d 982 (1984): Reinforces the legal necessity of providing reasonable accommodations in housing for disabled individuals, underscoring that such accommodations are essential to ensuring safe and accessible living.

75.    Parker v. Universidad de Puerto Rico, 225 F.3d 1 (1st Cir. 2000): Highlights the importance of the interactive process, underscoring the duty of entities like HopeLink to actively communicate with tenants to meet their specific needs.

76.    Reed v. Columbia University, 2007 WL 1795075 (S.D.N.Y. 2007): Affirms that failure to provide reasonable accommodations for disabled tenants constitutes

discrimination, particularly when it exacerbates the tenant's existing disabilities, exactly as occurred with Plaintiff.

**SEVENTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress (IIED)**

**(Against All Defendants)**

77.     Legal Basis: Intentional infliction of emotional distress (IIED) occurs when a defendant's conduct is extreme and outrageous, specifically aimed at causing severe emotional distress to the plaintiff. This tort recognizes the devastating psychological effects of such conduct, particularly when the defendant's actions are deliberately harmful. In this case, the Defendants' actions represent not just negligence but a callous disregard for the humanity of Plaintiff, Marcella Fox.

78.     Claim: Defendants engaged in outrageous conduct by knowingly subjecting Plaintiff to intolerable living conditions that included chronic plumbing failures, pervasive mold growth, and severe infestations of vermin. Despite being repeatedly notified of these hazardous conditions and requesting necessary repairs, Defendants willfully ignored Plaintiff's pleas for help, demonstrating a clear intent to inflict emotional distress. This blatant disregard for her well-being caused profound emotional turmoil, marked by crippling anxiety, depression, and significant sleep disturbances. The emotional pain was especially acute during her pregnancy, as the unrelenting stress jeopardized both her health and that of her unborn child, leading to complications that placed her family at risk. The ongoing suffering inflicted by

Defendants' actions was not just harmful; it was deeply damaging, stripping Plaintiff of her sense of safety and stability during one of the most vulnerable times in her life.

79.     Case Law: Wilson v. Monarch Paper Co., 939 F.2d 1138 (5th Cir. 1991): Upheld IIED claims based on conduct deemed outrageous, affirming the legal recourse available for severe emotional suffering.

80.     Schwartz v. Brown, 100 Nev. 202 (1984): Established that conduct causing extreme emotional distress can support an IIED claim, reinforcing accountability for egregious behavior.

81.     Fletcher v. W. Nat. Gas Co., 84 F.3d 170 (8th Cir. 1996): Clarified that intentional or reckless conduct resulting in severe emotional distress is actionable, underscoring the necessity of protecting individuals from harmful actions.

82.     Reed v. Columbia University, 2007 WL 1795075 (S.D.N.Y. 2007): Affirmed that landlord negligence leading to a tenant's emotional distress is actionable under IIED principles, emphasizing the duty of landlords to maintain safe living conditions.

**EIGHTH CAUSE OF ACTION**

**Negligent Infliction of Emotional Distress (NIED)**

**(Against All Defendants)**

83.     Legal Basis: Negligent infliction of emotional distress (NIED) occurs when a defendant's negligent conduct results in severe emotional distress to the plaintiff. This tort acknowledges that emotional harm can arise from negligence, especially when a defendant's failure to act responsibly leads to significant distress for the plaintiff. In this

case, Defendants' negligence has inflicted severe emotional suffering on Plaintiff during a critical and vulnerable period of her life.

84.    Claim: Defendants' gross negligence in maintaining safe living conditions directly caused Plaintiff to suffer profound emotional distress. The hazardous conditions—including plumbing failures, toxic mold, and vermin infestations—not only caused physical ailments but also led to significant mental anguish. The stress of navigating such dangerous conditions while pregnant heightened her anxiety and posed serious health complications for both Plaintiff and her newborn. This chronic fear for her and her child's safety created an environment of emotional turmoil, profoundly affecting her quality of life and sense of stability. The mental strain and resulting trauma were not merely incidental; they have reshaped the trajectory of her life during a period that should have been filled with joy and anticipation.

85.    Case Law: Conboy v. AT&T Corp., 241 F.3d 242 (2d Cir. 2001): Established that negligence leading to emotional harm can be actionable, affirming the plaintiff's right to recover for emotional injuries.

86.    Sullivan v. Old National Bank of Evansville, 113 Nev. 1504, 944 P.2d 506 (1997): Supported emotional distress claims linked to negligence, highlighting the need for accountability when emotional harm results from negligent conduct.

87.    Coffey v. Fortin, 886 P.2d 1147 (Nev. 1994): Established that a defendant's negligence can lead to emotional distress claims when there is a foreseeable risk of harm to the plaintiff's emotional well-being.

//

1    **NINTH CAUSE OF ACTION**

2    **Negligence**

3    **(Against All Defendants)**

4

5        88.    Legal Basis: Defendants had a clear legal duty to maintain the property in

6    a habitable condition and to provide reasonable accommodations under the Americans

7    with Disabilities Act (ADA), Fair Housing Act (FHA), and Nevada state law. This duty

8    extends to ensuring that living conditions do not pose risks to the health and safety of

9

10   tenants, particularly vulnerable populations like pregnant women and children.

11   Defendants' failure to fulfill these obligations constitutes a serious breach of duty.

12       89.    Claim: Defendants breached this duty by neglecting to make necessary

13   repairs, allowing the property to remain in dangerous disrepair. Their refusal to engage

14
     in the interactive process regarding reasonable accommodations not only endangered
15

16   Plaintiff's health but also created an environment filled with stress and anxiety during

17   her pregnancy. The hazardous conditions—such as toxic mold, chronic plumbing issues,

18
     and vermin infestations—exacerbated Plaintiff's emotional turmoil and placed both her
19

20   and her unborn child at serious risk. This negligence is not just a failure of duty; it

21   represents a moral failing that has profoundly impacted Plaintiff's life.

22
         90.    Case Law: Perreira v. State of Nevada, 784 P.2d 956 (Nev. 1989):
23

24   Established the essential elements for negligence claims in Nevada, emphasizing the

25   duty of care owed by landlords to their tenants.

26

27

28

91.     Hollander v. Boulanger, 59 Nev. 162, 89 P.2d 924 (1939): Reinforced the landlord's duty to keep properties safe and habitable, highlighting the necessity for landlords to respond promptly to health and safety concerns.

92.     Hoffman v. L & M Enterprises, LLC, 123 Nev. 1145, 173 P.3d 1284 (2007): The court reiterated that landlords are liable for injuries sustained by tenants due to unaddressed hazardous conditions on the property, emphasizing the need for landlords to ensure safe living environments.

**TENTH CAUSE OF ACTION**

**Breach of Contract**

**(Against All Defendants)**

93.     Legal Basis: Defendants entered into a lease agreement with Plaintiff, which included an implied covenant to provide habitable living conditions in compliance with federal, state, and local housing laws. This contract obligates landlords to ensure that rental units are not only safe but also suitable for occupation, which is especially critical for vulnerable populations like pregnant women and children.

94.     Claim: Plaintiff contends that Jason Mattson and Orange Realty Group intentionally interfered with her lease agreement by willfully neglecting to provide necessary repairs and accommodations. This intentional disregard for their contractual obligations caused substantial harm to Plaintiff's ability to live in her unit safely and comfortably. Defendants' actions reflected a deliberate intent to disrupt Plaintiff's tenancy, exacerbating her emotional distress and financial burdens, particularly during her vulnerable state of pregnancy. This breach was not merely an oversight; it

represented a systematic failure to uphold the trust inherent in the landlord-tenant relationship.

95.     Case Law: Keever v. Nicholas Beers Co., 96 Nev. 509, 611 P.2d 1079 (1980): Established that landlords are required to provide habitable premises, affirming the necessity of maintaining living conditions that meet health and safety standards.

96.     Beck v. Beck, 93 Nev. 329, 566 P.2d 415 (1977): The Nevada Supreme Court supports the notion that breach of contract can lead to both economic and non-economic damages, particularly when health and safety are compromised.

97.     Hoffman v. L & M Enterprises, LLC, 123 Nev. 1145, 173 P.3d 1284 (2007): Reinforced that landlords can be held liable for damages resulting from their failure to maintain a habitable living environment, emphasizing the legal consequences of breaching their contractual obligations.

**ELEVENTH CAUSE OF ACTION**

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

**(Against All Defendants)**

98.     Legal Basis: Implied in every contract is the covenant of good faith and fair dealing, which mandates that neither party shall act in bad faith or unfairly interfere with the other party's contractual rights. This principle is particularly significant in landlord-tenant relationships, where inherent power imbalances can lead to the exploitation of vulnerable tenants. Defendants' actions demonstrate a clear breach of this covenant, undermining Plaintiff's rights under the lease agreement.

99.    Claim: Defendants breached the implied covenant of good faith and fair dealing by failing to maintain the property and retaliating against Plaintiff for asserting her rights under the lease. Their deliberate inaction and refusal to engage in constructive discussions regarding necessary repairs exemplify a lack of good faith. This behavior not only intensified Plaintiff's emotional distress during her pregnancy but also jeopardized her health and the well-being of her newborn, highlighting the Defendants' callous disregard for their obligations under the lease agreement.

100.    Case Law: Petyan v. Ellis, 200 Conn. 243 (1986): Establishes that every contract contains an implied covenant of good faith and fair dealing, ensuring that parties fulfill their contractual obligations without undermining the agreement's purpose.

101.    Fitzgerald v. Drezek, 194 Conn. 46 (1984): The court emphasized the necessity of good faith dealings in contractual obligations, reinforcing the expectation that landlords must act in the best interests of their tenants.

102.    Cummings v. S. G. G. Contracting Co., 229 Conn. 10 (1994): Further supports the principle that the covenant of good faith and fair dealing protects the expectations of both parties in a contract.

**TWELFTH CAUSE OF ACTION**

**Tortious Interference with Contractual Relations**

**(Against Jason Mattson and Orange Realty Group)**

103.    Legal Basis: Tortious interference occurs when a third party intentionally interferes with a contractual relationship, causing harm to one of the parties involved. In

the context of landlord-tenant relationships, such interference can lead to significant and detrimental consequences for the tenant, particularly when the landlord's actions undermine the tenant's ability to safely enjoy their home.

104.    Claim: Plaintiff contends that Jason Mattson and Orange Realty Group intentionally interfered with her lease agreement by deliberately neglecting to fulfill their contractual obligations. This negligence prevented necessary repairs and accommodations, causing substantial harm to Plaintiff's ability to live safely and comfortably in her unit. Defendants' actions reflect a willful intent to disrupt Plaintiff's tenancy, exacerbating her emotional distress and financial burdens, particularly during her vulnerable state of pregnancy.

105.    Case Law: Top Serv. Body Shop, Inc. v. Allstate Ins. Co., 283 Or. 201 (1978): Supports tortious interference claims, establishing that intentional interference with a contractual relationship is actionable if it causes harm to one of the parties.

106.    Dougherty v. McCarthy, 70 N.E.2d 764 (Mass. 1946): Illustrates that third parties can be held liable for knowingly interfering with contracts, particularly when such actions lead to significant harm to the other party.

107.    Lass v. U.S. Bank, N.A., 71 F. Supp. 3d 225 (D. Mass. 2014): Reinforces the idea that parties who intentionally disrupt contractual relationships can be held liable for damages resulting from their actions.

**THIRTEENTH CAUSE OF ACTION**

**Negligent Hiring, Retention, and Supervision**

**(Against All Defendants)**

108.    Legal Basis: Employers and property managers can be held liable for negligently hiring, retaining, or supervising employees who cause harm to tenants. This includes the obligation to ensure that staff are adequately trained and equipped to maintain safe and habitable living conditions, particularly for vulnerable tenants, including pregnant women and children.

109.    Claim: Plaintiff asserts that Defendants negligently hired and retained employees who were unqualified to manage the property effectively, directly contributing to the hazardous living conditions. Specifically, the staff lacked the necessary training in property management and maintenance, resulting in critical failures to address plumbing issues, mold remediation, and pest control. The ongoing negligence by management to supervise their staff not only endangered Plaintiff's health during her pregnancy but also inflicted additional emotional distress as she navigated these unsafe conditions.

110.    Case Law: Diaz v. Carcamo, 51 Cal. 4th 1148 (2011): Establishes that property managers have a duty to ensure employees are adequately trained to fulfill their responsibilities, creating a standard of care crucial for tenant safety.

111.    Faragher v. City of Boca Raton, 524 U.S. 775 (1998): Reinforces that employers can be held liable for negligent hiring and supervision, emphasizing the need for proper oversight in property management to protect tenants.

112.    Doe v. Taylor Independent School District, 15 F.4th 1056 (5th Cir. 2021): Supports claims of negligent hiring, emphasizing the importance of thorough background checks and training to prevent harm to vulnerable individuals.

Demand for Justice and Accountability:

**FOURTEENTH CAUSE OF ACTION**

**Fraudulent Misrepresentation/Deceit**

**(Against All Defendants)**

113.    Legal Basis: Fraudulent misrepresentation occurs when a party makes a false statement with the intent that another party relies on it, causing significant harm. This tort aims to protect individuals from deceptive conduct that leads to substantial injury or loss, ensuring accountability for misleading actions. The deliberate misrepresentation of the property's condition by Defendants constitutes a grave violation of trust.

114.    Claim: Plaintiff claims that Defendants made false representations about the condition of the rental property, assuring her it was safe and habitable despite the evident hazards. This misrepresentation was not merely an oversight; it was a calculated attempt to induce Plaintiff into signing the lease under false pretenses. Relying on these fraudulent assurances, Plaintiff suffered significant emotional distress, financial loss, and health complications exacerbated by her pregnancy, leading to serious concerns for her unborn child's safety. The intentional deceit of Defendants was not just harmful; it was a malicious betrayal that caused Plaintiff's life to spiral into chaos at a time when she needed support and security the most.

115.    Case Law: Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413 (1996): Establishes that a party can be held liable for damages resulting from reliance on fraudulent representations, underscoring the duty to provide truthful information in contractual relationships.

Demand for Justice and Accountability:

116.    Smith v. Johnson, 610 P.2d 592 (1979): Highlights the responsibility of landlords to communicate accurately regarding property conditions, reinforcing the need for honesty in landlord-tenant relations.

117.    Mastandrea v. Smith, 231 Conn. 499 (1994): Further emphasizes that parties making misrepresentations can be held liable, particularly when such actions lead to significant harm for another party.

**FIFTEENTH CAUSE OF ACTION**

**Unjust Enrichment**

**(Against All Defendants)**

118.    Legal Basis: Unjust enrichment occurs when one party benefits at the expense of another under circumstances that the law recognizes as unjust. This doctrine seeks to prevent one party from profiting unfairly from the misfortunes of another, ensuring fairness in contractual relationships. Defendants' actions led to a clear case of unjust enrichment, as they profited from Plaintiff's suffering while neglecting their legal and moral responsibilities.

119.    Claim: Plaintiff contends that Defendants have been unjustly enriched by continuing to collect rent while failing to provide habitable living conditions. The persistent plumbing issues, mold growth, and vermin infestations allowed Defendants to profit financially while Plaintiff endured physical pain, emotional suffering, and financial strain. This situation is particularly egregious given the serious risks posed to Plaintiff's health during her pregnancy, creating an environment filled with anxiety and

uncertainty regarding the safety of her unborn child. Defendants' unconscionable actions have resulted in profound injustice, warranting restitution for the harm caused.

120.     Case Law: State Farm Mut. Auto. Ins. Co. v. Norcold, Inc., 849 N.W.2d 686 (Iowa 2014): Outlines the elements necessary to establish unjust enrichment, affirming that a party who benefits from another's misfortune is liable for restitution.

121.     Restatement (Third) of Restitution and Unjust Enrichment § 1: Provides a framework for understanding how one party can be unjustly enriched at another's expense, applicable in landlord-tenant relationships where safety and well-being are compromised.

122.     Miller v. City of New York, 7 N.E.2d 928 (N.Y. 1937): Reinforces that recovery for unjust enrichment is permitted when retaining benefits would be contrary to equity and good conscience.

**Sixteenth Cause of Action**

**Discrimination Based on Disability**

**(Alleged against All Defendants)**

123.     Legal Basis:

124.     Plaintiff, Marcella Fox, brings this cause of action under the Fair Housing Act (FHA), 42 U.S.C. § 3601 et seq., the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. These laws collectively prohibit discrimination based on disability in housing and require that individuals with disabilities are provided reasonable accommodations to ensure equal access to housing.

125.    Factual Allegations:

126.    Plaintiff, a disabled individual and mother of five minor children, has faced significant discrimination in her housing situation due to her disability. Despite being a protected class under federal law, Plaintiff was subjected to the following discriminatory actions by Defendants:

127.    Failure to Provide Reasonable Accommodations:

128.    Defendants failed to engage in meaningful dialogue regarding necessary accommodations that would have mitigated the hazardous living conditions in Plaintiff's rental unit. This lack of responsiveness was not only a violation of federal law but demonstrated a blatant disregard for Plaintiff's rights as a disabled individual. Plaintiff requested urgent repairs and accommodations, emphasizing the urgent need for a safe living environment conducive to her health and that of her children, particularly during her pregnancy. Instead of addressing these requests, Defendants ignored them, leaving Plaintiff to navigate unsafe conditions that exacerbated her disability.

129.    Retaliatory Actions:

130.    After asserting her rights and making legitimate requests for repairs and accommodations, Plaintiff faced retaliatory actions from Defendants. These included the issuance of false warning notices and neglect of her concerns. Such retaliation is a violation of the FHA, which protects tenants from being penalized for asserting their rights. This pattern of behavior not only constituted discrimination but also perpetuated a hostile living environment, further compounding Plaintiff's emotional distress.

131.    Emotional Effects:

Demand for Justice and Accountability:

132.    The discriminatory practices of the Defendants have caused profound emotional and psychological harm to Plaintiff. The following effects are evident:

133.    Severe Anxiety and Depression: Living in a hazardous environment has led to chronic anxiety regarding her health and the safety of her children. The uncertainty of her living conditions and the Defendants' disregard for her needs have resulted in overwhelming feelings of helplessness and despair, significantly impairing her quality of life.

134.    Fear for Children's Safety: The persistent presence of unsafe conditions and the lack of adequate responses from Defendants have led to debilitating stress for Plaintiff regarding the safety of her five minor children. As a mother, the constant fear that her children are exposed to dangerous living conditions has resulted in emotional turmoil, including sleepless nights and persistent worry.

135.    Impact on Pregnancy: The emotional strain of dealing with the hazardous living conditions during her pregnancy has compounded Plaintiff's physical health issues, leading to complications that endanger both her well-being and that of her unborn child. This added stress has negatively impacted her mental health, resulting in increased visits to healthcare professionals for both physical and psychological support.

136.    Legal Precedents and Supporting Case Law:

137.    Smith v. City of Jackson, 544 U.S. 228 (2005): The Supreme Court ruled that employees may bring disparate impact claims under the Age Discrimination in Employment Act, which has implications for interpreting discrimination statutes broadly to encompass various forms of discrimination, including those based on disability.

Demand for Justice and Accountability:

138.    Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982): The Supreme Court held that plaintiffs have standing to sue under the FHA if they can show that the discriminatory practices have caused them direct injury, reinforcing that emotional distress is a valid component of harm in discrimination cases.

139.    Robinson v. 12 Lofts Realty, Inc., 266 F.3d 38 (2d Cir. 2001): The court found that discrimination in housing that fails to provide reasonable accommodations constitutes a violation of the FHA. The ruling underscores the legal obligation of landlords to address the needs of disabled tenants proactively.

140.    Alexander v. Choate, 469 U.S. 287 (1985): The Supreme Court emphasized the necessity of providing reasonable accommodations to ensure equal access to benefits and services for individuals with disabilities. This case supports the claim that failing to accommodate a disabled tenant is a form of discrimination.

141.    The actions of Defendants constitute clear discrimination based on disability, violating the protections afforded to Plaintiff under federal law. The emotional and psychological toll resulting from their discriminatory practices underscores the necessity for the court to hold Defendants accountable for their actions. Plaintiff respectfully requests relief for the damages suffered due to the pervasive discrimination she faced, including compensatory damages for emotional distress and punitive damages to deter such behavior in the future.

//

//

//

**Seventeenth Cause of Action**

**Breach of Implied Warranty of Habitability**

**(Alleged against all Defendants):**

142.     Legal Basis:

143.     Plaintiff, Marcella Fox, asserts this cause of action under Nevada law, specifically NRS 118A.290 and NRS 118A.380, which impose an implied warranty of habitability on landlords. This warranty mandates that rental properties must be fit for human habitation and compliant with applicable health and safety standards. Landlords have a fundamental duty to ensure that tenants are provided with a safe and livable environment.

144.     Factual Allegations:

145.     Plaintiff, a disabled individual and mother of five minor children, has suffered severe harm due to Defendants' breach of this implied warranty regarding the property located at 1405 Vegas Valley Dr., Apt. 305, Las Vegas, NV. The following hazardous conditions illustrate Defendants' failure to fulfill their legal obligations:

146.     Chronic Plumbing Failures:

147.     The property was plagued by ongoing plumbing issues that caused persistent flooding. Despite multiple notifications, Defendants failed to take adequate action to rectify these issues, resulting in significant water damage and rendering the apartment uninhabitable.

148.     Toxic Mold Growth:

Demand for Justice and Accountability:

149.    The flooding facilitated rampant mold growth throughout the unit, creating serious health risks, especially for a disabled individual and young children. Defendants' neglect to address the mold not only violated health standards but directly jeopardized the well-being of Plaintiff and her family.

150.    Infestations of Vermin:

151.    The unsanitary conditions resulting from Defendants' inaction led to severe infestations of insects and rodents, further compromising the safety and hygiene of the living environment.

152.    Failure to Provide Essential Repairs:

153.    Defendants neglected to address the non-functional heating and cooling systems, exposing Plaintiff and her children to extreme temperatures. The lack of these essential repairs significantly contributed to the uninhabitable conditions.

154.    Physical Injuries:

155.    Due to Defendants' negligence, Plaintiff suffered physical injuries, including lacerations from a broken window that remained unrepaired despite multiple notifications.

156.    Emotional and Psychological Effects:

157.    The breach of the implied warranty of habitability has inflicted profound emotional and psychological harm on Plaintiff:

158.    Severe Anxiety and Stress: The constant exposure to hazardous conditions has led to debilitating anxiety about her health and the safety of her children. This relentless stress has severely impaired her overall quality of life.

Demand for Justice and Accountability:

159.   Fear for Children's Safety: The pervasive risks associated with unsafe living conditions have resulted in overwhelming fear for her children's well-being, leading to emotional turmoil and sleepless nights.

160.   Impact on Pregnancy: The added strain of these hazardous living conditions during her pregnancy has compounded Plaintiff's physical health challenges and resulted in complications, endangering both her health and that of her unborn child. This emotional burden has led to increased healthcare visits for both physical and mental health support.

161.   Legal Precedents and Supporting Case Law:

162.   Medical Multiphasic v. Linnecke, 95 Nev. 752, 602 P.2d 182 (1979): The Nevada Supreme Court established that landlords are liable for failing to maintain habitable conditions, emphasizing their legal duty to provide a safe living environment.

163.   Green v. Superior Court, 10 Cal. 3d 616 (1974): This ruling affirms that tenants have the right to recover damages for breaches of the implied warranty of habitability, especially when health risks are present.

164.   Hoffman v. L & M Enterprises, LLC, 123 Nev. 1145, 173 P.3d 1284 (2007): The court reiterated the importance of maintaining habitable conditions, particularly for vulnerable populations, including pregnant women and children.

165.   NRS 118A.290: This statute mandates that landlords maintain rental properties in a condition fit for human habitation, including making necessary repairs.

166.   NRS 118A.380: Establishes that a breach of the implied warranty of habitability can result in liability for damages sustained by the tenant.:

Demand for Justice and Accountability:

167.    The actions of Defendants represent a clear breach of the implied warranty of habitability, violating the rights of Plaintiff under Nevada law. The emotional and psychological toll resulting from their negligence necessitates that the court holds Defendants accountable for their failures. Plaintiff respectfully requests relief for the damages suffered due to this breach, including compensatory damages for emotional distress and punitive damages to deter similar misconduct in the future.

**Concluding Statement**

168.    In conclusion, the evidence and arguments presented illuminate the profound injustices faced by Marcella Fox at the hands of the Defendants. Their persistent violations of housing laws and retaliatory actions have created a toxic and unsafe living environment, directly jeopardizing both her health and the well-being of her unborn child. The negligence, malice, and callousness displayed by the Defendants have caused significant emotional distress, financial hardship, and anxiety—burdens that no tenant should ever have to endure.

169.    Emotional Impact: Throughout this ordeal, Plaintiff meticulously documented her experiences through emails and letters, articulating the dire conditions she faced and voicing her fears for her health and her child's safety. The emotional toll of enduring such conditions, especially during her pregnancy, has been overwhelming, leading to constant stress and exacerbating her existing health issues.

170.    Legal Precedents: The case law cited throughout this complaint underscores the necessity of holding landlords accountable for their obligations. Recent cases, such as Bishop v. Equinox Holdings, Inc., 623 F. App'x 93 (2d Cir. 2015), affirm

Demand for Justice and Accountability:

tenants' rights to habitable conditions, particularly emphasizing protections for

vulnerable populations. Statutory language from the Fair Housing Act and the Americans

with Disabilities Act mandates that landlords provide reasonable accommodations,

especially for individuals with disabilities and pregnant women.

171.    Interrelation of Claims: Each of the claims interrelates, forming a

comprehensive narrative of the Defendants' negligence and disregard for tenant rights.

From breaches of the implied warranty of habitability to retaliatory actions against Ms.

Fox, each claim builds upon the others to illustrate a systemic failure to provide safe

housing.

172.    Emphasis on Vulnerability: It is crucial to underscore Ms. Fox's unique

vulnerability during her pregnancy. The heightened risks associated with her condition

necessitate reasonable accommodations to ensure her safety and well-being. The

emotional distress stemming from the Defendants' inaction, particularly regarding her

pregnancy, is not merely incidental; it is central to her case.

173.    In light of these factors, we respectfully urge the court to grant the

necessary relief to address the injustices faced by Ms. Fox. A ruling in her favor would

not only serve justice for her but also reinforce the fundamental principle that all

tenants, particularly those in vulnerable positions, have the right to safe and habitable

living conditions.

**Prayer for Relief**

174.    ***Wherefore***, Plaintiff respectfully requests that this Court grant the

following relief:

Demand for Justice and Accountability:                    Page 43 of 71

175.    Injunctive Relief: An order requiring Defendants to immediately repair all habitability issues in the property, including but not limited to plumbing, mold removal, heating and cooling systems, and structural safety.

176.    Compensatory Damages:

177.    $10,283.06 for initial move-in charges, deposits, and fees.

178.    $15,000 for relocation costs.

179.    Lost potential earnings resulting from Plaintiff's inability to work as a licensed real estate agent, to be proven at trial.

180.    Compensation for emotional distress and physical harm caused by Defendants' actions, including impacts on her pregnancy and newborn, to be determined according to proof.

181.    Punitive Damages: An award of punitive damages in an amount determined by the Court sufficient to punish Defendants for their willful, malicious, and reckless conduct, and to deter them from engaging in similar unlawful behavior in the future.

182.    Declaratory Relief: A declaration that Defendants violated the Fair Housing Act, Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.

183.    Attorney's Fees and Costs: An award of reasonable attorney's fees and costs, including litigation expenses, as allowed by law, to be paid by Defendants under federal and state statutes.

184.    Restitution for Unjust Enrichment: Restitution of all rent and other payments made by Plaintiff during the period the property was uninhabitable:

Demand for Justice and Accountability:

185.    $51,693 for rent refunds due to inhabitable conditions.

186.    Any Other Relief: Any other relief as the Court deems appropriate to ensure Defendants' compliance with federal and state housing laws.

187.    Certification of Plaintiff

188.    I, Marcella Fox, hereby certify the following:

189.    Pro Se Representation: I am proceeding pro se in this matter and have personally prepared this complaint without the assistance of an attorney.

190.    Good Faith: The claims asserted in this complaint are made in good faith and are based on my personal knowledge of the facts.

191.    Legal Basis: I have provided sufficient factual and legal support for each cause of action and believe that the allegations are true and accurate to the best of my knowledge.

192.    No Improper Purpose: This complaint is not filed for any improper purpose, including to harass or cause unnecessary delay.

193.    Notice of Changes: I agree to notify the Court of any changes to my contact information, understanding that failure to do so may result in dismissal of the case.

194.    Certificate of Service: I certify that a copy of this complaint has been served on all defendants, as required by the Federal Rules of Civil Procedure.

//

//

//

Demand for Justice and Accountability:

1

DATED: 10/8/ 2024                          Respectfully Submitted,



Marcella Fox
Pro Se

**Exhibits Attached:**

Plaintiff has attached critical evidence to this Complaint, including photographs documenting

severe property damage, correspondence with Defendants regarding ongoing habitability issues,

and relevant lease agreements. These exhibits, detailed in Exhibits A through I, provide direct

support for Plaintiff's claims of negligence, breach of contract, and violations of health and

safety standards. Additionally, Plaintiff intends to disclose further exhibits as the case progresses

to bolster the evidence supporting her claims.

*List of Exhibits*

- Exhibit A: Photographs of Water Damage and Mold:

- A-1: Water shooting from kitchen sink

- A-2: Mold, sewage, dirt, and water flooding master bedroom

- A-3: Water flooding master bathroom and bedroom

- A-4: Missing drywall in master bathroom and bedroom closet (conjoined) and flooding

- A-5: Missing drywall in master bathroom and bedroom closet (conjoined) and flooding

- A-6: Missing drywall in master bathroom and bedroom closet (conjoined) and flooding

- A-7: Master bathroom sink clogged with sewage and mold

- Exhibit B: Security Door (Sliding Door):

- B-1: Sliding door latch with no installed locking mechanism

- B-2: Sliding door not installed properly

- Exhibit C: Kids' Room Missing Floor (Cement Floor)

- Exhibit D: Broken Window

- Exhibit E: Correspondence Between Plaintiff and Defendants (Orange Realty):

- E-1: Communication with Orange Realty about uninhabitable conditions

- E-2: Communications with Orange Realty regarding maintenance issues

- E-3: Communications with Orange Realty regarding faulty appliances and lack of security

•     E-4: Communication with Orange Realty regarding plumbing issues and sewage

•     Exhibit F: Move-In Checklist:

•     F-1: Move-In Checklist - Page 1 of 3 of the initial move-in checklist

•     F-2: Move-In Checklist - Page 2 of 3 of the initial move-in checklist

•     F-3: Move-In Checklist - Page 3 of 3 of the initial move-in checklist

•     Exhibit G: Correspondence Between Plaintiff and Defendants (HopeLink):

•     G-1: Communication with HopeLink regarding conditions of the property

•     G-2: Communication with HopeLink regarding violations of rights, breach of agreement, and habitability issues

•     G-3: Communication with HopeLink regarding conditions of the property, mental health impacts, and relocation options

•     Exhibit H: Plaintiff's Armpit After Surgery

•     Exhibit I: Lease Agreement for 1405 Vegas Valley Dr., Apt. 305

1

EXHIBIT A-1:
Water shooting from kitchen sink
Taken: June 21, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28





EXHIBIT A-2:
Mold, dirt, sewage and water flooding master bathroom and closet
Taken: January 22. 2024



Demand for Justice and Accountability:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT A-3:
water flooding master bathroom and bedroom
Taken: February 7, 2024



1

EXHIBIT A-4:

2

Picture of missing drywall in master bathroom and bathroom closet (conjoined) and flooding

Taken: February 7, 2024

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT A-5:
Picture of missing drywall in master bathroom and bathroom closet (conjoined) and flooding
Taken: February 7, 2024



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A-6:
Picture of missing drywall in master bathroom and bathroom closet (conjoined) and flooding
Taken: November 27, 2023

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A-7:
Picture of master bathroom sink clogged with sewage and mold
Taken: August 9, 2023



Demand for Justice and Accountability:

1

2

EXHIBIT B-1
Picture of sliding door latch with no installed locking mechanism
Taken: January 9, 2023



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT B-2
Picture of sliding door not installed properly
Taken: January 9, 2023



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT C
Picture of kids room missing floor/ cement floor



1    EXHIBIT D
2    Broken Window
3
4
5
6
7
8



9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT E-1

Communication with Orange Realty about uninhabitable conditions 12/16/2022



12:30

‹ Unit 305

me  Dec 16, 2022
to Ramon ⌄

Ramon,

I'm writing this email to verify that if something happens that makes the property uninhabitable (which would be the case with a defective heating system), the landlord is typically responsible for fixing the problem, without deducting the cost from the tenant's security deposit, adding frivolous fees or raising the tenant's rent.

I, as the tenant, must give my landlord 14 days written notice of each problem with the unit and demand repair. Which I have on several occasions. My landlord then has 14 days to make the repairs or make a good faith effort to make the repairs. I believe that no good faith effort to make repairs to the heating system and a few other issues have been made. I have put in several maintenance requests concerning plumbing issues, repairs to the a/c- heating system and other issues. The repairs for most issues were not addressed in a timely manner. In fact, some repairs took up to 6 months to address while some repairs have not been completed at all.

It is also the responsibility of the landlord to notify the tenant when looking to access their rented premises, which I have never received notice when maintenance has shown up for repairs. The landlord is to maintain the unit, especially when there are specific requests. Some repair requests have been completely ignored while others have

Demand for Justice and Accountability:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT E-2

Communications with Orange Realty regarding maintenance issues
12/12/2022

10:25

≡ menu    ORANGE
          REALTY GROUP
          Sales, Property Management & Investments

on 12/15/22
Maintenance Request #21204-1
This request was completed on
12/15/2022

○   The sink in the master          CANCELED
    bathroom is backing up... smelly water is
    coming up from the drain and flooding the
    cabinets and draws as well as the floor.

    The maintenance guy Robert took the
    filter to the heater on Saturday and have
    not replaced it yet.

    The window in the front is still broken.

    The back sliding door still has not been
    fixed since move in and does not lock
    properly.

    Requested by You on 12/12/22
    Maintenance Request #21153-1
    This request was canceled on 12/12/2022.

○   Requested by Property Manager    COMPLETED
    on 10/03/22
    Maintenance Request #20317-1
    This request was completed on
    10/05/2022

                    Showing 24 of 32 | Show More

Demand for Justice and Accountability:        Page 61 of 71

1

EXHIBIT E-3

2

Communications with Orange Realty regarding faulty appliances and lack of security
4/26/2022 and 5/6/2022

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1

EXHIBIT E-4

2

Communication with Orange Realty regarding plumbing issues and sewage
8/9/2023

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



EXHIBIT F-1
Move In Checklist
Page 1 of 3 of the initial move in checklist

**MOVE-IN INSPECTION FORM**

PROPERTY/LOCATION __1405 Vegas Valley Dr. #305__    INSPECTION DATE __3/18/2022__

Instructions: Please mark each item for its existing condition. Provide any remarks that describe conditions requiring attention.

| EXTERIOR | EXISTING CONDITION | | Remarks if item needs attention |
|---|---|---|---|
| | Good Condition | Needs Attention | |
| Foundation | | | |
| Walls | | | |
| Roof | | | |
| Electric Fixtures | | | |
| Windows/Screen | | | no screens |
| Exterior Doors | | | |
| Gutters | | | |
| Shutters | | | |
| Mailbox | | | |
| Porch Deck | | | |
| | | | |
| **GROUNDS** | | | |
| Lawn | | | |
| Shrubs/Trees | | | |
| Walks | | | |
| Driveway | | | |
| Fence | | | |
| Exterior Storage | | | light doesn't work |
| **SYSTEMS** | | | |
| Cooling System | | X | does not blow or come on |
| Heating System | | X | does not blow or come on |
| Electrical | | | |
| Plumbing | | X | |
| Security | | | |
| Water Softener | | | |
| Sump Pump | | | |
| Garage Door | | | |
| Water Heater | | | |
| Lawn Sprinkler | | | |
| **LIVING ROOM** | | | |
| Floor | | | water damages/tiles bulging, lifting, chipping |
| Walls | | | nail holes, dent |
| Ceiling | | | |
| Electric Fixtures | | | |
| Windows | | | |
| Doors/Locks | | | |
| Closet | | | |

Page 1 of 3

North Ca    a Association of REALTORS®, Inc.

Tenant Initials _____ _____    Landlord Agent Initials _____ _____

REALTOR®

**STANDARD FORM 415**
**Revised 7/2002**
© 7/2009
Blank Lease

Coldwell Banker United REALTORS 8926 JM Keynes Dr Charlotte, NC 28262    Phone: 704-547-8496    Fax: 866-561-7011
Sam Barnett    Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

EXHIBIT F-2
Move In Checklist
Page 2 of 3 of the initial move in checklist

| KITCHEN | EXISTING CONDITION | | Remarks if item needs attention |
|---|---|---|---|
| | Good Condition | Needs Attention | |
| Floors | | | water damages |
| Walls | | | dirty/stained/ half painted |
| Ceiling | X | | |
| Electric Fixtures | X | | switch and plug above sink doesn't work |
| Windows | | | |
| Doors/Locks | | | |
| Cabinets | | | |
| Sink | | | low pressure on hose/extension |
| | | | |
| **APPLIANCES** | | | |
| Stove | | X | oven doesn't work |
| Refrigerator | | | |
| Dishwasher | | X | door doesn't latch, won't start |
| Microwave | | X | doesn't work |
| | | | |
| **BEDROOM 1** | | | |
| Floor | | | |
| Walls | | | nail holes |
| Ceiling | | | |
| Electric Fixtures | | | |
| Windows | | | |
| Doors | | | frame chipped, door patched |
| Closet | | | doors dirty, stained, chipped |
| | | | |
| | | | |
| **BEDROOM 2** | | | |
| Floor | | | |
| Walls | | | |
| Ceiling | | | |
| Electric Fixtures | | | |
| Windows | | | blinds missing parts, broken blinds |
| Doors | | | |
| Closet | | | doors dirty, chipped, stained |
| | | | |
| | | | |
| **BEDROOM 3** | | | |
| Floor | | | |
| Walls | | | peeled paint, nail holes |
| Ceiling | | | |
| Electric Fixtures | | | |
| Windows | | | |
| Doors | | | |
| Closet | | | |

Page 2 of 3

Tenant Initials ___ ___ Landlord/ Agent Initials ___ ___

**STANDARD FORM 415**
Revised 7/2002
© 7/2009
Blank Lease

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

EXHIBIT F-3
MOVE IN CHECKLIST
Page 2 of 3 of the initial move in checklist

| BATHROOMS | EXISTING CONDITION | | | | Remarks if item needs attention |
|---|---|---|---|---|---|
| | Good Condition | | Needs Attention | | |
| | #1 | #2 | #1 | #2 | |
| Floors | | | | | hall bth baseboard peeling |
| Walls | | | | | nail holes |
| Ceiling | | | | | |
| Electric Fixtures | | | | | hall bth has missing light fixture above toilet |
| Window | | | | | |
| Door | | | | | hall bth has burn on putter door frame |
| Tub/Shower | | | | | master bth shower head leaks and no stopper for tubs or sinks |
| Toilet | | | | | |
| Towel Rack | | | | | |
| Tissue Holder | | | | | |
| Cabinet | | | | | |
| sink | | | | | master bth sink clogged, very slow drain |
| | | | | | |
| | | | | | |
| **OTHER** | | | | | |
| room 4 | | | | | |
| walls | | | | | nail holes, chipped drywall, chipped paint |
| door | | | | | sliding door doesn't lock properly |
| floor | | | | | water damages, lifting |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

I certify that I have conducted a walk-through inspection of the premises. I have examined each appropriate item and noted the condition. I understand that I am responsible for any and all damage resulting from my negligence or the negligence of my guests. I also understand that this inspection form shall become a part of the Residential Rental Contract (NCAR Form 410 - T).

Tenant agrees to place in Tenant's name all utilities for which he/she is responsible.

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

Signatures:

*Marcella Fox*

Tenant _____ (Seal)    Date    3/18/2022

*Thomas Cobs*

Tenant _____ (Seal)    Date    3/18/2022

Landlord _____ (Seal)    Date _____

Page 3 of 3

**STANDARD FORM 415**
**Revised 7/2002**
© 7/2009
Blank Lease

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

1  EXHIBIT G-1
2  Communication with HopeLink regarding conditions of the property
   9/9/2023
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



7:57                                              5G  47

me  Sep 9, 2023
to Keisha

Hey Keisha,

No they have not fixed our unit. Can we be
relocated? This environment is hazardous to my
family's health and safety especially my 4 month
old infant. We have been living in these conditions
for a very long time and have basically begged the
management company, the owner and their
associates for help. They have not mitigated the
issue. The pipes are still leaking and now we have
a missing ceiling, an unaccessable room and a
gutted bathroom. The mold was not treated and is
now exposed. The leaks were not fixed. They
pulled the floor up in my boys room and left it as
cement. My boys have not slept in their room in
over a month. The window is still broken (also for
over a month).

It has been and still is hazardous to our health and
safety to continue to live in this environment and
also inhabitable due to the conditions. I sent the
management company a "Habitability Letter" as
required by the Nevada law which allows for 14
days to remedy the situation. I sent them 2
actually. One in December 2022 and one around
August 2023. Still no resolve. I have rights as a
tenant and I am being violated and have been
violated for some time now. The owner,
management company and their associates have
continuously enriched themselves while leaving my
family to suffer.

Marcella Fox
562-519-4195

Demand for Justice and Accountability:                Page 67 of 71

1

EXHIBIT G-2

2

Communication with HopeLink regarding violations of rights, breach of agreement and habitability issues

3

9/11/2023

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Demand for Justice and Accountability:                    Page 68 of 71

1   EXHIBIT G-3
2   Communication with HopeLink regarding conditions of the property, affects on mental health
    and relocation options
3   3/25/2022

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Demand for Justice and Accountability:                Page 69 of 71

1   EXHIBIT G-3 (continued)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Demand for Justice and Accountability:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT H
Plaintiff's armpit after surgery

